```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/8/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
TRAVELERS PROPERTY CASUALTY            :
COMPANY OF AMERICA,                    :
                                 Plaintiff,   :   20-CV-9888 (VEC)
                                               :
               -against-         :   ORDER AND OPINION
                                 :
                                 :
WESCO INSURANCE COMPANY,               :
                                 :
                                Defendant.   :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff Travelers Property Casualty Company of America ("Travelers") has sued Wesco Insurance Company ("Wesco") seeking a declaratory judgment and monetary damages. *See* Compl., Dkt. 1. Plaintiff has moved for partial summary judgment, *see* Pl. Mem. of Law, Dkt. 30; Wesco opposed Plaintiff's motion and cross-moved for summary judgment on Plaintiff's claims for declaratory judgment, *see* Def. Mem. of Law, Dkt. 35. Plaintiff opposed Defendant's cross-motion. *See* Pl. Mem. of Law, Dkt. 37. For the reasons discussed below, both motions are GRANTED in part and DENIED in part.

## BACKGROUND

       This case involves an intra-insurer dispute over insurance coverage for two personal injury actions pending in the Supreme Court of New York County. *See Onofrio Mazzurco et al. v. Broadway 52nd L.P. and Robert B. Samuels, Inc.*, Index Nos. 157381/2017 and 159872/2018 (the "Underlying Actions").

The parties agree on all relevant facts.[1]  Broadway 52nd LP ("Broadway") hired JT Magen & Co. ("JT Magen") as the general contractor for construction work at 1675 Broadway, New York, New York.  The contract between Broadway and JT Magen required JT Magen to include Broadway as an additional insured under its commercial general liability policy on a primary and non-contributory basis.  Plaintiff Travelers is JT Magen's commercial general liability insurer.  As required by contract, JT Magen included Broadway as an additional insured on that policy.

By purchase orders, JT Magen hired Robert B. Samuels, Inc. ("RBS") as a subcontractor on the job.  The purchase orders required RBS to include Broadway and JT Magen as additional insureds under its commercial general liability policy on a primary and non-contributory basis.  Defendant Wesco is the commercial general liability insurer for RBS.  As required by its contract, RBS named Broadway and JT Magen as additional insureds on its commercial general liability policy.

Onofrio Mazzurco, an employee of JT Magen, was allegedly injured while working at 1675 Broadway.  Mr. Mazzurco has sued Broadway and RBS in New York Supreme Court to recover damages for his injuries.

Hanover Insurance Group, which insures Broadway, tendered to JT Magen and Travelers Broadway's defense and indemnification in the Underlying Actions based on Broadway's status as an additional insured on the Travelers Policy.  Travelers has acknowledged its duty to defend and indemnify Broadway and has demanded that Wesco also defend and indemnify Broadway.

---

[1]  Where "[t]he parties do not dispute the material facts underlying the claim[,]" the case rests on interpretation of the insurance contract, which "is a question of law." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

Although Wesco initially refused Travelers' tender on behalf of Broadway, eventually Wesco acknowledged its duty to defend Broadway in the Underlying Actions.[2]

The primary dispute between the insurance companies is whether they are both primary on the risk or whether Travelers' policy is excess to the Wesco policy. Travelers argues that "other insurance" language in its policy makes clear that Travelers' coverage is excess to any other insurance as to which Broadway is an additional insured, as it is on the Wesco policy. *See* Pl. Mem. of Law at 1, 10–12; Compl. ¶ 10. Travelers is seeking a declaration that: (1) Wesco has a duty to defend and indemnify Broadway as an additional insured on its policy; (2) the coverage provided by Wesco is primary; and (3) Travelers' obligations to Broadway are excess and non-contributory to Wesco's with respect to the Underlying Actions. *See* Compl. ¶ 32; Pl. Mem. of Law at 1–2. Wesco argues that its duty to Broadway is co-primary and on a proportional-shares basis with Travelers. *See* Def. Mem. of Law at 1, 10–16.[3]

**I.   Travelers Policy**

Travelers issued a Commercial General Liability and Employee Benefits Liability Insurance Policy to JT Magen (the "Travelers Policy"). The Travelers Policy contains an endorsement for Additional Insureds (the "Scheduled Person Endorsement"). The schedule of additional insureds includes Broadway, and the Scheduled Person Endorsement provides that "Who is an insured" in Section II of the policy is amended so that a "person or organization shown in the Schedule [is an insured], but only with respect to liability arising out of [JT

---

[2]   Although not relevant to the current dispute, Wesco asserted a reservation of rights if it is determined that RBS did not cause, in whole or in part, Mazzurco's injuries.

[3]   Wesco inconsistently argues that it and Travelers should share coverage on an equal-shares basis and that coverage should be on a proportional-shares basis. *Compare* Def. Mem. of Law at 1 *with* Def. Mem. of Law at 14–16; *see also infra* at 14–15.

Magen's] ongoing operations performed for that insured." Pl. Rule 56.1 Statement ¶ 3 (citing Decl. of Amy Gross at Ex. A, Dkt. 30–7 at 806); Def. Rule 56.1 Statement ¶ 11 (same).

The Blanket Additional Insured endorsement (the "Blanket Additional Insured Endorsement") also amends the definition in Section II of "Who is an insured." This endorsement provides that "any person or organization [that JT Magen is ] required to include as an additional insured . . . by a written contract or written agreement . . . [is an insured]. . . . The person or organization is only an additional insured with respect to liability caused by 'your work'[4] for that additional insured." The Blanket Additional Insured Endorsement further provides, in relevant part:

> Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured . . . unless a written contract or written agreement . . . specifically requires that this insurance apply on a primary or non-contributory basis. When this insurance is primary and there is other insurance available to the additional insured from any source, we will share with that other insurance by the method described in the policy.

Def. Rule 56.1 Statement ¶ 11 (citing Gross Decl. at Ex. A, Dkt. 30–3 at 72).

The final endorsement relevant to this dispute is the Other Insurance amendment (the "Other Insurance Amendment"). This amendment modifies the first part of Section IV, paragraph 4 (Commercial General Liability Conditions) and provides that if there is an insured loss under coverages A and B,[5] Traveler's obligations are "excess over any of the other insurance, . . . that is available to the insured when the insured is added as an additional insured

---

[4] Travelers' main Commercial General Liability coverage form defines "your work" to include "[w]ork or operations performed by you or on your behalf." *See* Gross Decl. at Ex. A, Dkt. 30–3 at 30.

[5] Coverage A covers bodily injury and property damage liability, and Coverage B covers personal and advertising injury liability. *See id.* at 16–22.

under any other policy, including any umbrella or excess policy." Pl. Rule 56.1 Statement ¶ 4 (citing Gross Decl. at Ex. A, Dkt. 30–3 at 37); *see also* Def. Rule 56.1 Statement ¶ 11 (same).

## II. Wesco Policy

Wesco issued a commercial general liability insurance policy to RBS ("the Wesco Policy"). The Wesco Policy contains an endorsement for Additional Insureds (the "Scheduled Person Endorsement"). The schedule of additional insureds includes Broadway and JT Magen. The Scheduled Person Endorsement provides that "Who is an insured" in Section II of the policy is amended so that a "person or organization shown in the Schedule [is an insured]," but only with respect to "liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part by: (1) [RBS's] acts or omissions; or (2) the acts or omissions of those acting on [its] behalf." Pl. Rule 56.1 Statement ¶ 7 (citing Gross Decl. at Ex. B at 157); Def. Rule 56.1 Statement ¶ 8 (same).

With respect to other insurance, Wesco's main Commercial General Liability coverage form provides that "[t]his insurance is primary except [for situations not relevant here]. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary." The coverage form further provides:

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of all insurers.

Pl. Rule 56.1 Statement ¶ 8 (citing Gross Decl. at Ex. B at 28); Def. Rule 56.1 Statement ¶ 8 (same).

## DISCUSSION

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).

While the Court must construe the facts in the light most favorable to the non-moving party, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).

**I.   Wesco's Duty to Defend and Indemnify Broadway**

Travelers moves for summary judgment with respect to its claim for a declaratory judgment that: (1) Wesco has a duty to defend and, if necessary, indemnify Broadway in the Underlying Actions; and (2) the coverage provided by the Wesco Policy is primary. *See* Pl. Mem. of Law at 1–2, 8–10; Compl. ¶ 32. Wesco does not dispute that it owes a duty to defend Broadway or that its policy provides primary coverage to Broadway. *See* Def. Mem. of Law at 1, 10, 13. Accordingly, Plaintiff is entitled to summary judgment on both points. Wesco has a duty to defend and, if necessary, to indemnify Broadway as an additional insured, and Wesco's coverage of Broadway is primary coverage.

## II. The Parties' Coverage Obligations

The crux of the parties' dispute is over whether Travelers' obligations to Broadway are excess and non-contributory to Wesco's obligations, such that Wesco has the sole, primary duty to defend Broadway in the Underlying Actions. *See* Pl. Mem. of Law at 2, 10–12, Compl. ¶ 32; *see also* Def. Mem. of Law at 1.

Travelers contends that its coverage of Broadway is excess and non-contributory to Wesco's coverage. Wesco, on the other hand, argues that it has a co-primary duty with Travelers to defend Broadway because the policies cover different risks. In the alternative, Wesco argues that, regardless of whether the policies cover Broadway for the same risk, the policies' respective Other Insurance provisions mandate that the policies are co-primary. *See* Def. Mem. of Law at 10–14.

### A. Both Policies Cover the Same Risk

Under New York law, "where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage. . . , priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 327 (S.D.N.Y. 2020) (cleaned up) (citing *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 65 A.D.3d 12, 18 (1st Dep't 2009)); *see also Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686–87 (1999).

Determining whether policies cover the same risk is a question of law for the Court. *Charter Oak*, 462 F. Supp. 3d at 327. Courts must not "distort the meaning of the terms of the policies involved" and are required to consider "the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of

7

its provision concerning excess insurance." *Certain Underwriters v. Ill. Nat. Ins. Co.*, 99 F. Supp. 3d 400, 405 (S.D.N.Y. 2015) (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374 (1985)); *see also Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*, 475 F. Supp. 2d 400, 408 (S.D.N.Y. 2007) ("the general rule of construction to be used in interpreting insurance policies is that words are to be given their ordinary meaning and, if an ambiguity arises, it should be resolved in favor of the insured") (quoting *Long Island R. Co. v. Interboro Mut. Indem. Ins. Co.*, 84 A.D.2d 809 (2d Dep't 1981)).

Wesco argues that use of the term "your ongoing operations" in Travelers' Scheduled Person Endorsement indicates that the scope of its coverage is different than the Wesco Policy, which covers "'bodily injury' . . . caused, in whole or in part, by [RBS's] acts or omissions."[6] *See* Def. Mem. of Law at 10–11 (relying on *HRH Constr. Corp. v. Com. Underwriters Ins. Co.*, 11 A.D.3d 321 (1st Dep't 2004); *Penn. Mfr. Ass'n Ins. Co. v. Liberty Mut. Ins. Co.*, 39 A.D.3d 1161 (4th Dep't 2007)); *see also* Def. Reply Mem. of Law, Dkt. 39 at 2.[7]

Travelers argues that its coverage of "ongoing operations" by JT Magen, the general contractor on the project, covers both JT Magen's work and the work of those acting on its behalf, including its subcontractor RBS. *See* Pl. Reply Mem. of Law, Dkt. 37 at 2–5 (citing, *inter alia*, *E.E. Cruz*, 475 F. Supp. 2d at 410; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest*, 248 A.D.2d 78, 84 (1st Dep't 1998), *aff'd*, 93 N.Y.2d 983 (1999);

---

[6] Wesco fails to mention or explain the meaning of the phrase "ongoing operations" in its own policy. *See* Wesco's Scheduled Person Endorsement, Gross Decl. at Ex. B at 157 (covering "liability for 'bodily injury' . . . caused, in whole or in part, by [RBS's] acts or omissions . . . in the performance of [its] ongoing operations for the additional insured(s) at the location designated above").

[7] Wesco also stresses the inconsistency in the Travelers Policy between its Scheduled Person Endorsement — covering "your ongoing operations" — and its Blanket Additional Insured Endorsement, which covers additional insureds "with respect to liability caused by 'your work.'" *See* Def. Mem. of Law at 12; Def. Reply Mem. of Law at 4–5; *see also* Travelers' Blanket Additional Insured Endorsement, Gross Decl. at Ex. A, Dkt. 30–3 at 72 ("The person or organization is only an additional insured with respect to liability caused by 'your work' for that additional insured.").

*B.K. Gen. Contractors, Inc. v. Mich. Mut. Ins. Co.*, 204 A.D.2d 584, 585 (2d Dep't 1994)). Travelers further argues that its use of the phrase "your ongoing operations," rather than "your work," in its Scheduled Person Endorsement was meant simply to limit the endorsement to "liability arising out of JT Magen's work while the work was ongoing, not after the work was completed." *Id.* at 5.

It is clear that both policies cover the same risk. Travelers' use of the term "ongoing operations" in its Scheduled Person Endorsement does not denote a separate scope of coverage from "your work," but, rather, indicates a focus on covering "operations under the Contract occurring prior to the completion of the work contracted for." *E.E. Cruz*, 475 F. Supp. 2d at 411; *see also Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 Fed. App'x 148, 150 (2d Cir. 2006); *Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.*, 238 F. Supp. 3d 604, 615 (S.D.N.Y. 2017); *Town of Fort Ann v. Liberty Mut. Ins. Co.*, 69 A.D.3d 1261, 1262–63 (3d Dep't 2010); *Perez v. New York City Hous. Auth.*, 302 A.D.2d 222 (1st Dep't 2003); *Zurich Am. Ins. Co. v. Burlington Ins. Co.*, 2016 WL 1324196, at *5 (Sup. Ct. N.Y. Cnty. Apr. 4, 2016). This focus does not disturb or contradict Travelers' coverage of an additional insured, such as Broadway, "with respect to liability caused by '[JT Magen's] work,'" which is defined as "[w]ork or operations performed by [JT Magen] or on [JT Magen's] behalf." *See* Gross Decl. at Ex. A, Dkt. 30–3 at 30, 72; *see also Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (finding the ordinary definition of "operations" to be the "doing or performing of 'work'").[8] Thus, Travelers and Wesco's policies cover the same risk: work done by JT Magen,

---

[8]  Defendant's cited case law is inapposite; neither *HRH Construction* nor *Pennsylvania Manufacturing* addressed the insurance configuration here, where one company is covered as an additional insured under both a contractor's and a subcontractor's policy. *See HRH Constr. Corp.*, 11 A.D.3d at 323 (policies covered different risks because they covered different subcontractors' work and offered coverage "only for claims arising out of work performed by that carrier's primary named insured); *Penn. Mfr. Ass'n Ins. Co.*, 39 A.D.3d at 1161–62 (policies for different subcontractors covered different risks, bodily injury from painting versus inspection).

9

whether directly or through its subcontractor RBS. *See, e.g.*, *Nat'l Union Fire Ins.*, 248 A.D.2d at 84 (policies of contractor and subcontractor covered the same risk, even though one policy was "much broader" than the other); *B.K. Gen. Contractors*, 204 A.D.2d at 585 (policies of contractor and subcontractor covered the same risk where both provided coverage for "personal injuries"); *see also Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 150 F. Supp. 3d 345, 357 (S.D.N.Y. 2015) ("both insurance policies need only be triggered by the same underlying event or action in order for a claim for contribution to lie").

Because both policies cover the same risk, the Court must look to the policies' respective Other Insurance provisions to determine the priority of coverage between Wesco and Travelers. *See, e.g.*, *Charter Oak*, 462 F. Supp. 3d at 327; *Great N. Ins.*, 92 N.Y.2d at 686–87.

### B. Travelers and Wesco Owe Broadway Co-Primary Coverage

An insurer's duty to defend, while "exceedingly broad", is limited absolutely by the scope of coverage it agreed to provide. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *Arch Specialty*, 238 F. Supp. 3d at 611–12; *BP A.C. Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007). Where, based on the Other Insurance provisions of the policies at issue, "one party's policy is primary with respect to the other policy, then the party issuing the primary policy must pay up to the limits of its policy before the excess coverage becomes effective." *Osorio v. Kenart Realty, Inc.* 48 A.D.3d 650, 653 (2d Dep't 2008) (citing *Great N. Ins.*, 92 N.Y.2d at 687); *accord, e.g.*, *Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 276 (S.D.N.Y. 2020) (citing *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011)); *Sport Rock Intern.*, 965 A.D.3d at 18–19 (collecting cases).

"A policy is read as a whole and 'in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement.'" *Richner Commc'ns, Inc. v. Tower Ins. Co. of N.Y.,* 72 A.D.3d 670, 671 (2d Dep't 2010) (quoting *Cnty. of Columbia v. Cont'l Ins. Co.,* 83 N.Y.2d 618, 628 (1994)).  Only where a policy is unambiguous may a district court construe it as a matter of law.  *See Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006).

To determine whether a policy's language is ambiguous, a court should interpret the policy "from the vantage point of the reasonable expectations and purposes of the ordinary person."  *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998) (cleaned up). An insurance contract is ambiguous "if reasonable minds could differ as to its meaning."  *Id.*  If the policy is ambiguous, the court should consider extrinsic evidence to assist in determining the actual intent of the parties to the ambiguous policy.  *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994); *see also Moreau v. Orkin Exterminating Co.*, 165 A.D.2d 415, 418 (3d Dep't 1991) (a court "need not ignore positive proof, extrinsic to the [underlying] complaint, that assists in clarifying an ambiguous allegation").  If extrinsic evidence does not reveal the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved against the insurer.  *See AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 187 F. Supp. 3d 428, 436 (S.D.N.Y. 2016) (citing, *inter alia*, *Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96, 101 (1994)); *see also Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 88 n.7 (2d Cir. 2002) ("under New York law, courts should not resort to *contra proferntem* until after consideration of extrinsic evidence").

The parties agree that Wesco's Policy provides Broadway with primary insurance; the parties dispute only whether the Travelers Policy provides primary or excess coverage. Wesco argues that, although Travelers' Other Insurance Amendment specifies that its coverage is "excess over any of the other insurance . . . that is available to the insured when the insured is added as an additional insured under any other policy," Travelers' Blanket Additional Insured Endorsement provides that coverage is primary when "a written contract or written agreement . . . specifically requires that this insurance apply on a primary and non-contributory basis." *Compare* Gross Decl. at Ex. A, Dkt. 30–3 at 37 *with id.* at 72. Read together, Wesco asserts, these provisions make clear that Travelers' coverage is excess to any other policy covering an entity as an additional insured unless, as here, the insured was contractually required to provide the additional insured with primary and non-contributory coverage. *See* Def. Mem. of Law at 13–14. Alternatively, Wesco argues, the conflicting provisions raise an ambiguity that must be construed against Travelers. *See id.* at 14.

Travelers argues, with no citation to authority, that, "to the extent that there is a conflict between the two potentially relevant Travelers endorsements, the Specified Person Endorsement controls." Pl. Reply Mem. of Law at 6.[9] Travelers further argues that its Other Insurance Amendment creates an exception to the Blanket Additional Insured Endorsement, such that Travelers' coverage is excess if there is other insurance available to the entity as an additional insured, even if a contract required the insured to provide primary and non-contributory coverage to the additional insured. *See id.* at 7.

---

[9] This argument, and all others related to the Scheduled Person Endorsement, fails because the Scheduled Person Endorsement does not contain any language regarding other insurance. *See* Gross Decl. at Ex. A, Dkt. 30–7 at 806. The conflict that does exist is between the Other Insurance Amendment and the Blanket Additional Insured Endorsement in the Travelers Policy. *See id.*, Dkt 30–3 at 37, 72. Both provisions are written in a blanket fashion; thus, Travelers' argument that "the parties intended the Specified Person Endorsement to control with respect to the specific entities (including Broadway)," *see* Pl. Reply Mem. of Law at 6, is irrelevant.

12

The flaw in Travelers' argument is that the Other Insurance Amendment does not modify the Blanket Additional Insured Endorsement; it modifies Paragraph 4.b of the policy's Commercial General Liability coverage form regarding other insurance. *See* Travelers' Other Insurance Amendment, Gross Decl. at Ex. A, Dkt. 30–3 at 37. Thus, the Policy itself provides no clear relationship or hierarchy between two conflicting provisions; it is equally plausible that one controls over the other. This conflict between the Other Insurance Amendment and the Blanket Additional Insured Endorsement constitutes an ambiguity warranting consideration of extrinsic evidence of the parties' intent. *See, e.g.*, *Int'l Multifoods*, 309 F.3d at 87 ("because the contract is facially ambiguous, the District Court may consider any evidence that is probative of the parties' intent, including parol evidence"); *Port Auth. of N.Y. & N.J. v. Brickman Ltd., LLC*, 181 A.D.3d 1, 12 n.12 (1st Dep't 2019) (finding an ambiguity where one endorsement would afford additional insured coverage while another endorsement would not).

The best extrinsic evidence of the parties' intent with respect to Travelers' coverage of Broadway is the contract between Broadway and JT Magen, Travelers' primary insured. *See* Decl. of Max Gershweir, Dkt. 33 at Ex. A; *see also, e.g.*, *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 346–47 (S.D.N.Y. 2021) (considering the underlying contract to determine insurance coverage). Schedule B of that contract clearly required JT Magen to include Broadway as an additional insured under its commercial general liability policy on a primary and non-contributory basis. *See* Gershweir Decl. at Ex. A at Schedule B ¶ A2.[10] The contract between JT Magen and Broadway, coupled with the Blanket Additional Insured Endorsement, evinces an unambiguous intent to provide Broadway with primary coverage. *See, e.g.*, *United*

---

[10] "Under the Conditions Section of the Commercial General Liability Insurance Policy, the Other Insurance Clause shall be amended to read 'The insurance policies described on this certificate of insurance are primary, and noncontributory, insurance for Broadway 52nd LP . . . any insurance maintained by such parties notwithstanding.'" Gershweir Decl. at Ex. A at Schedule B ¶ A2.

*Parcel Serv. v. Lexington Ins. Group*, 983 F. Supp. 2d 258, 265 (S.D.N.Y. 2013) (where a separate written agreement requires additional insured coverage — even if it does not explicitly require primary coverage — the insurer owes primary coverage because "the 'well-understood meaning of the term [additional insured] is an entity enjoying the same protection as the named insured'") (quoting *Pecker Iron Works of N.Y. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393 (2003)); *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, No. 20-CV-4614, 2021 WL 2856521, at *19 (S.D.N.Y. July 7, 2021) (holding that the "natural reading" of similar conflicting language and underlying contracts was that the insurer had a primary duty to the additional insured because such coverage was required by written contract); *Pecker*, 99 N.Y.2d at 393 ("coverage for 'additional insureds' was primary coverage unless unambiguously stated otherwise").

Accordingly, Wesco and Travelers have a co-primary duty to defend Broadway.

**III.    The Parties Must Contribute to Broadway's Defense on an Equal-Shares Basis**

In its cross-motion, Wesco argues that the policies' applicable sharing provisions and limits require that Travelers pay 60 percent of Broadway's defense costs and Wesco pay 40 percent based on policy limits of $3 million and $2 million, respectively. *See* Def. Mem. of Law at 14. Travelers argues that, if it has a primary duty, it and Wesco must defend Broadway on an equal-shares basis. *See* Pl. Reply Mem. of Law at 8–9.

The Wesco Policy provides that "[if] all of the other insurance permits contribution by equal shares, we will follow this method also. . . . If any of the other insurance does not permit contribution by equal shares, we will contribute by limits." Gross Decl. at Ex. B at 28. The Travelers Policy contains identical language. *See* Gross Decl. at Ex. A, Dkt. 30–3 at 26–27. Travelers' Blanket Additional Insured Endorsement further provides that, "[w]hen this insurance

14

is primary and there is other insurance available to the additional insured from any source, we will share with that other insurance by the method described in the policy." *Id.* at 72.

Although Wesco insists that the policies' Other Insurance provisions are "noncommittal" with respect to the method of sharing, *see* Def. Mem. of Law at 15, courts have repeatedly interpreted language virtually identical to that at issue here to require coverage on an equal-shares basis, *see, e.g.*, *Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*, 836 F.2d 54, 57–58 (2d Cir. 1987) (language prescribing equal sharing "[i]f all such other valid and collectible insurance provides for contribution by equal shares" indicates "an intent that the contributions by the coinsurers to defense costs should be in equal amounts"); *J.P. Realty Trust v. Pub. Serv. Mut. Ins. Co.*, 102 A.D.2d 68, 72 (1st Dep't 1987) (per curiam), *aff'd*, 64 N.Y.2d 325 (1985) ("these matching clauses, which apparently have become standard in the industry, adequately manifest an intent for the application of contribution by equal shares under the circumstances"); *see also U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*, 893 F.2d 517, 520 (2d Cir. 1990) (same).

Thus, Travelers and Wesco must share equally in Broadway's defense.

## CONCLUSION

In sum, both parties' motions for partial summary judgment are granted in part and denied in part. Wesco has a duty to defend and, if necessary, indemnify Broadway as an additional insured, and Wesco's coverage of Broadway is primary coverage. Travelers and Wesco have co-primary duties to defend Broadway. And, finally, Travelers and Wesco must share in Broadway's defense on an equal-shares basis. The Clerk of Court is respectfully directed to close the open motions at docket entries 29 and 31.

The parties must meet and confer and, in a joint letter not to exceed five pages, propose a schedule for next steps in this case. Their joint letter is due by **February 25, 2022**.

**SO ORDERED.**

Date:  February 8, 2022
       New York, NY

                                          **VALERIE CAPRONI**
                                          **United States District Judge**